# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WESTCHESTER SURPLUS LINES INSURANCE CO.** | No. 3:09-cv-1744 |
| **Plaintiff** | |
| v. | |
| **SAFE AUTO INSURANCE GROUP, INC.** | J. RAMBO |
| **Defendant** | |

## MEMORANDUM

Before the court is Defendant Safe Auto Insurance Group's ("Safe Auto") motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12 (b)(6). (Doc. 25.) In addition, before the court is Plaintiff Westchester Surplus Lines Insurance Company's ("WSLIC") motion to file a Second Amended Complaint. (Doc. 34.) For the reasons that follow, Safe Auto's motion to dismiss will be granted, and WSLIC's motion to file a Second Amended Complaint will be denied.

## I.    BACKGROUND

### A.    Facts[1]

WSLIC is the liability insurance company for Safe Auto, an automobile insurance company based out of Ohio. WSLIC claims that Safe Auto made material misrepresentations when it filled out an application for insurance coverage with WSLIC. Specifically, WSLIC alleges that Safe Auto failed to disclose information

---

[1] The following facts are derived from Plaintiff's First Amended Complaint and are taken as true for the purposes of deciding this motion.

about pending litigation involving Safe Auto and one of its insureds, Jay R. Robinson.

### A. *Robinson v. White*

The underlying case surrounded a traffic accident between Robinson, an individual insured by Safe Auto, and Cindy and David White, which occurred in 2001. In 2002, the Whites offered to settle the matter with Safe Auto for Robinson's policy limit of $15,000. Safe Auto rejected this offer and instead asked for various medical documents from the Whites. Counsel for the Whites responded by accusing Safe Auto of using bad faith and delay tactics. Two months later, the Whites filed a complaint against Robinson in the Wyoming County, Pennsylvania, Court of Common Pleas. Thereafter, Safe Auto retained counsel for Robinson. This counsel recommended to Safe Auto in February of 2003, that they settle for the policy limit of $15,000. This same counsel filed a cross-claim against Mr. White for negligence for causing the car crash. This cross-claim allegedly angered the Whites, who no longer wanted to resolve the case by settlement. However, in July of 2003, Safe Auto offered to settle for $15,000.

On July 29, 2003, Counsel for the Whites sent a letter rejecting Safe Auto's offer, the letter stated

> it was abundantly clear that your insurance carrier never discussed with the insured, Mr. Robinson, the fact we had offered to settle the case for policy limits of $15,000 which offer was rejected in the face of overwhelming evidence that the case had a value in excess of $100,000 thereby deliberately exposing him to the excess verdict.

(Doc. 18-3, Ex. E, Ltr. from Thomas J. Foley, Esq. to John Reed Evans, Esq., July 29, 2003.)

2

In October of 2005, Safe Auto again made a settlement offer, this time in the amount of $50,000. The Whites rejected this offer stating that they would accept no less than $200,000. Having reached an impasse, the case proceeded to trial on November 14, 2005, where after a jury awarded a $3.25 million verdict- $2.5 million for the injuries sustained by Ms. White and $750,000 for Mr. White's loss of consortium.

As a result of the verdict, Mr. Robinson retained private counsel because he was concerned that Safe Auto had exposed him to an excess verdict. In late November, Safe Auto filed post-trial motions on Mr. Robinson's behalf, including a motion for new trial, motion for remittitur, and a supplemental motion for post-trial relief.

After the verdict, but sometime before December 1, 2005, Mr. Robinson advised Safe Auto that he intended on filing a bad faith claim against it because it exposed him to an excess verdict. In addition, on February 15, 2006, Mr. Robinson, through his counsel, demanded that Safe Auto settle both the *White v. Robinson* matter and Mr. Robinson's own bad faith claim.

On April 20, 2006, a mediation was held on the *White v. Robinson* case which resulted in a settlement for $2.5 million. WSLIC, as Safe Auto's insurance carrier, contributed $2.25 million to the settlement. This contribution was subject to a non-waiver agreement entered into by the parties.

Subsequently, on June 26, 2006, another mediation was held on the pending bad faith claims by Mr. Robinson against Safe Auto. The parties agreed to settle for $289,000. WSLIC contributed $75,000 to this settlement which was also subject to a non-waiver agreement.

3

### B. Safe Auto's Application for Insurance with WSLIC

On July 28, 2005, in the midst of the *Robinson* litigation, Safe Auto applied for a Management Protection Insurance Policy from WSLIC. WSLIC claims that Safe Auto made the following representations in the application and that it breached these representations by not disclosing the pending *White v. Robinson* matter (answers in bold):

> 23. c. Are there established procedures for handling claims or suits against Applicant for errors and omissions, extra contractual liability or punitive or exemplary damages?
>
> **"Yes" with attached sheet explaining the following- On a monthly basis, the Litigation Supervisors are required to report all formalized "bad faith allegations" and/or extra-contractual demands to the Vice President- Litigation, and to the Insurance Broker who issued the Company its Professional Liability Policy. Further, as required by the Liability Insurance Carrier, the Company makes all files available for inspection and copying by the Insurance Broker. This procedure was implemented in January, 2003. Beyond this, the Company complies with any and all requests from the Liability Insurance Carrier and/or its Insurance Broker, as required by the terms and conditions of the Professional Liability Policy. Internally, because a substantial extra-contractual verdict could affect the Company's surplus, the Litigation Unit is required to keep the Executive Staff apprised of any and all significant developments in an action claiming extra-contractual damages by way of status reports and internal memoranda.**
>
> 25. Please provide the following information on the applicant's procedures for the handling, assessment and monitoring of all actual lawsuits against the applicant, its directors, officers or employees for Wrongful Acts in the performance of Professional Services (as defined in the Policy), including, but not limited to, lawsuits alleging errors or omissions or seeking extra-contractual, punitive or bad faith damages.
>
>  a. Does the applicant have established procedures? **Yes [describing that] Office of General Counsel is**

4

**directly responsible for assessing such lawsuits, hiring and directing outside counsel and reporting to and advising the Senior Executives and Board.**

b. Is a written applicant directive for these procedures in effect? **No.**

c. When were these procedures established? **January 3, 2005.**

d. How often are these procedures reviewed and analyzed? **Annual basis**.

e. Who is (are) the senior person(s) responsible for monitoring and assessing all lawsuits of this nature? **Mark D. LeMaster, General Counsel, Secretary and Vice President.**

26. Please provide the following information on the applicant's procedures for the handling, assessment and monitoring of written and/or verbal threats of lawsuits against the applicant, its directors, officers or employees related to Wrongful Acts in the performance of Professional Services (as defined in the Policy), including, but not limited to, threats alleging errors or omissions, or extra-contractual, punitive or bad faith damages.

a. Does the applicant have established procedures? **Yes.**

b. Please describe the supervisory position (or individuals, if applicable) to which threats are reported. Specify whether all threats are reported to supervisory personnel and what specific criteria are used to determine the level of supervision to which threats are reported. **All such threats that are reasonably likely to result in a claim against the corporation are reported to supervisory personnel.**

c. Under what circumstances are threats reported tot [sic] he individual listed in question 25e? **All such threats that are reasonably likely to result in a claim against the Corporation are reported to the Office of General Counsel by Supervisory Personnel.**

(Insurance Company's Professional Liability Insurance Renewal Application, Doc. 18-2, at 2 of 47.)

In addition, Plaintiff draws attention to the signature page of the application which reads:

> ALL WRITTEN STATEMENTS AND MATERIALS FURNISHED TO THE COMPANY TO WHICH THIS APPLICATION IS SUBMITTED (HEREIN CALLED THE COMPANY) IN CONJUNCTION WITH THIS APPLICATION ARE HEREBY INCORPORATED BY REFERENCE INTO THIS APPLICATION AND MADE A PART HEREOF. NOTHING CONTAINED HEREIN OR INCORPORATED HEREIN BY REFERENCE SHALL CONSTITUTE NOTICE OF A CLAIM OR POTENTIAL CLAIM SO AS TO TRIGGER COVERAGE UNDER ANY CONTRACT OF INSURANCE.
>
> THIS APPLICATION DOES NOT BIND THE APPLICANT TO BUY, OR THE COMPANY TO ISSUE THE INSURANCE, BUT IT IS AGREED THAT THIS FORM SHALL BE THE BASIS OF THE CONTRACT SHOULD A POLICY BE ISSUED, AND IT WILL BE ATTACHED TO AND MADE A PART OF THE POLICY. THE UNDERSIGNED APPLICANT DECLARES THAT THE STATEMENTS SET FORTH IN THIS APPLICATION ARE TRUE. THE COMPANY RELIES ON THE TRUTHFULNESS OF THIS APPLICATION. FALSE STATEMENTS OR CONCEALMENT MAY LEAD TO LOSS OF COVERAGE. THE APPLICANT FURTHER DECLARES THAT IF THE INFORMATION SUPPLIED ON THIS APPLICATION CHANGES BETWEEN THE DATE OF THIS APPLICATION AND THE TIME WHEN THE POLICY IS ISSUED, THE APPLICANT WILL IMMEDIATELY NOTIFY THE COMPANY OF SUCH CHANGES AND THE COMPANY MAY WITHDRAW OR MODIFY ANY OUTSTANDING QUOTATIONS AND/OR AUTHORIZATION OR AGREEMENT TO BIND THE INSURANCE.

(*Id.*, at 9 of 47.)

Finally, Plaintiff's contest the applicability of the Higher Limits Warranty which was entered into by both parties and reads as follows:

> None of the Insureds is responsible for or has knowledge of any Wrongful Act, fact, circumstance or situation which

> such Insured has reason to believe, as of the inception of this Policy Period, might result in a future Claim which reasonably could exhaust the Underlying Limit.
>
> It is agreed that if any Insured has knowledge or information of any such act, error, omission or circumstance, any claim emanating therefrom is hereby excluded from [WSLIC's] proposed higher limit of $2,000,000 in excess of $2,000,000
>
> It is agreed that this warranty will be attached to and become part of the policy.

(Higher Limits Warranty Agreement, Doc. 18-2, at 14 of 47.) This document was signed by Mark LeMaster, General Counsel for Safe Auto. The same individual who filled out the application for insurance.

## II.     **Legal Standard**

When presented with a motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and ultimately must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009)).

The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler,* 578 F.3d at 211 (citations omitted). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (alterations in original).) In other words, a claim has "facial plausibility when the

7

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

**III.        Discussion**

   **A.  Motion to Dismiss**

WSLIC claims that Safe Auto breached the provisions quoted above by not disclosing the *White v. Robinson* matter in their initial application for insurance and also when Safe Auto failed to mention it when signing the Higher Limits Warranty. Additionally, although WSLIC does not bring any fraud claims, and makes clear in their briefings that common law fraud was not one of their allegations, they nonetheless contend that Safe Auto made material misrepresentations regarding the *White v. Robinson* matter, WSLIC alleges that this entitles it to rescind the contract. In the alternative, WSLIC argues it is not required to provide converage for any claims arising from the *White v. Robinson* matter or the *Robinson v. Safe Auto* matter. And finally, that Safe Auto is liable for breach of contract because it provided false or misleading information by failing to disclose the *White v. Robinson* matter..

Safe Auto argues that nothing in the language of the application required them to disclose the *White v. Robinson* litigation, and that at the time of the application, September 19, 2005, there was no prior or pending litigation involving the Whites or Robinson and Safe Auto specifically. Furthermore, Safe Auto argues that the Higher Limits Warranty would apply to any information which Safe Auto failed to disclose and would simply preclude Safe Auto from collecting any amounts beyond the original $2,000,000.[2]

---

[2] Safe Auto also argues that this is a fraud case, not a contract case, and that therefore a two-year statute if limitations applies and not a four-year. Inexplicably, this is the only issue WSLIC chose to fully address in their brief in opposition to the motion to dismiss. Because the court finds that
(continued...)

9

### 1. **Application**

The court agrees that the language quoted above from the insurance application does not require Safe Auto to disclose any past, pending or future litigation. For example, question 23(c) simply asks if there are procedures in place for claims which may incur extra-contractual liability, or punitive, or exemplary damages. Safe Auto answered in the affirmative and explained the process in place as of January 2003. (Insurance Company's Professional Liability Insurance Renewal Application, Doc. 18-2, at 7 of 47.) Nothing in this question suggests that Safe Auto was to list any pending or current litigation.

Next, in question 25, WSLIC asks if there are procedures in place for handling actual lawsuits against Safe Auto or its officers or employees for "Wrongful Acts in the performance of Professional Services . . ." (*Id.*, at 8 of 47.) Safe Auto responded that the Office of General Counsel, specifically Mark D. LeMaster, was responsible for assessing such lawsuits and reporting to the Senior Executives and Board, and that although not in writing, these procedures were effective January 3, 2005, and were reviewed on an annual basis. (*Id.*) However, this question did not ask Safe Auto to disclose any specific lawsuits pending at the time. Thus, Safe Auto's failure to disclose *Robinson v. White* was not a misrepresentation.

WSLIC also claims that Safe Auto should have disclosed underlying litigation when responding to question 26. This question asks what procedures Safe Auto had in place "for the handling, assessment and monitoring of written and/or

---

²(...continued)
WSLIC's claims fail on the merits, this issue need not be addressed.

verbal threats of lawsuits against the applicant, its directors, officers or employees related to Wrongful Acts in the performance of Professional Services . . . including, but not limited to, threats alleging errors or omissions, or extra-contractual, punitive or bad faith damages." (*Id.*) Safe Auto answered that it did in fact have such a policy, and that all threats which were reasonable likely to result in a claim against the corporation were reported to supervisory personnel, including to the Office of General Counsel. (*Id.*) Again, nothing in the phrasing of this question suggests that Safe Auto was to list specific claims which were pending before it, or threats which were reasonably likely to result in a claim against it.

WSLIC further contends that the language on the signature page of the contract somehow required Safe Auto to disclose underlying litigation. However, nothing in the plain language of the signature page required as much. The signature page merely has boiler plate language stating that the information provided in the application is true and correct. That any changes to the information between the date of the application and the date a policy is issued would be disclosed to WSLIC. And, although the application did not bind either party, it would be incorporated into any policy that was issued. The signature page also stated, "NOTHING CONTAINED HEREIN OR INCORPORATED HEREIN BY REFERENCE SHALL CONSTITUTE NOTICE OF A CLAIM OR POTENTIAL CLAIM SO AS TO TRIGGER COVERAGE UNDER ANY CONTRACT OF INSURANCE."

Again, nothing in this language asks Safe Auto to divulge any specific claims or potential claims against it. And in fact, clearly states that nothing in the contract constitutes notice of any claims or potential claims. WSLIC cannot argue both that nothing should constitute notice of a claim and that Safe Auto should have

provided notice of a claim in the application. Presumably, if Safe Auto had included information on either the *White* or *Robinson* matters on the application, the language in this clause would preclude Safe Auto from relying on the inclusion as notice of a claim to WSLIC.

As such, Safe Auto made no misrepresentations in the application because at no time was Safe Auto asked about any specific underlying litigation in the application or the accompanying signature page.

### 2. **Higher Limits Warranty**

Finally, WSLIC further argues that Safe Auto made misrepresentations when it filled out the Higher Limits Warranty because it did not disclose anything about either the *White* or *Robinson* matters. The Higher Limits Warranty does not explicitly ask for disclosure of specific claims; instead, the warranty reads, "[n]one of the Insureds is responsible for or has knowledge of any Wrongful Act, fact, circumstance or situation which such Insured has reason to believe, as of the inception of this Policy Period, might result in a future Claim which reasonably could exhaust the Underlying Limit." The Warranty than goes on to explain that the underlying limit would be $2,000,000 and that the Warranty would be incorporated into any policy that was potentially issued.

WSLIC claims that Safe Auto knew or should have known that the *White* case would exhaust the underlying limit, and thus should have reported this information before signing the warranty. In its complaint, WSLIC fails to mention any specific person, or persons, who knew or should have known, but instead generally states that this should have been known to senior level management. Safe Auto claims that WSLIC has failed to identify any facts that any senior executives or

General Counsel knew or should have known that the *White* or *Robinson* claims could, or would, exceed the policy limit of $2,000,000.[3]

The court agrees with Safe Auto that the allegations contained in the complaint do not sufficiently allege that either senior executives or General Counsel knew, or should have know, that either the *White* or *Robinson* matters would exceed $2,000,000 in damages. The complaint alleges that when the Higher Limits Warranty was signed in September of 2005, the most recent exchange of information between Safe Auto's counsel and counsel for the Whites, was a letter from the latter stating that Safe Auto had likely not discussed with Robinson the fact that the Whites had been willing to settle the case for $15,000, and that the Whites believed it was clear the case had a value of more than $100,000. (Doc. 33, at 26 of 36.) From where the court sits, there is a significant difference between knowing that a claim is worth more than $100,000 and knowing that it is worth $2,000,000. Thus, it strains credulity to suggest that Safe Auto knew, or should have known, that the underlying case would exceed $2,000,000 in damages simply because opposing counsel in the underlying case alluded that he case was worth more than $100,000. Moreover, Safe Auto counter-sued the Whites for negligence, suggesting it did not, at that point, believe that Robinson was at fault. As such, WSLIC has failed to properly allege that Safe Auto made any misrepresentations in the Higher Limits

---

[3] There is confusion between the parties regarding whether the "underlying policy limit" language contained in the Higher Limits Warranty refers to the $2,000,000 limit mentioned in the Warranty itself, or instead refers to policies issued by Safe Auto to its insureds. "Underlying policy limit" is not defined in the policy, and the Warranty itself does nothing to clarify the matter. However, because Plaintiff fails to cite anything in the record to indicate the Warranty is referring to policies issued by Safe Auto, and not to the more obvious answer that the Warranty is instead referring to the $2,000,000 it explicitly discusses, the court will agree with Defendant's reasoning that the "underlying policy limit" is $2,000,000.

Warranty, or that anyone at Safe Auto acted in bad faith when filling out the Higher Limits Warranty, thus triggering the policy limit of $2,000,000.

### B. Motion to File a Second Amended Complaint

WSLIC has filed a motion to file a Second Amended Complaint and has attached its proposed complaint. (*See* Doc. 34.) The proposed Second Amended Complaint does not cure the errors found in the First Amended Complaint, and will be denied.

Once a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Whether to grant or deny the motion is within the district court's discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A court may deny a motion for leave to amend if "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003). Mere delay will not warrant the denial of a motion for leave to amend "absent a concomitant showing of undue prejudice or bad faith." *Zygmuntowicz v. Hospitality Invs., Inc.*, 151 F.R.D. 53, 55 (E.D. Pa. 1993). Prejudice has been defined as "undue difficulty in prosecuting a position as a result of a change in tactics or theories." *Id*. "Amendment of the complaint is futile if the amendment would not cure the deficiency in the original complaint or if the amended complaint cannot withstand a motion to dismiss." *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983).

In sum, in considering a motion for leave to amend, the court must weigh the prejudice to the non-moving party against the harm to the movant if leave is not granted. 3 James Wm. Moore et al., Moore's Federal Practice § 15.15. The court should also consider judicial economy and the effect an amendment to the complaint would have on the court's management of the case. *Id*.

The changes made to WSLIC's proposed Second Amended Complaint do not add any claims, nor do they change any of the existing facts or allegations in any material way. The proposed Second Amended Complaint has the following changes:

In Paragraph 5 WSLIC changed the words "condition precedent" to allegations that Safe Auto made misrepresentations in the "binding of the policy."

In Paragraph 6 WSLIC proposes to add the words "under the terms and conditions of the policy described hereunder."

WSLIC would like to add Paragraphs 9, 11, 13 and 15 all of which state- "Upon information and belief, the [] warranties made by defendant to WSLIC were false. Upon information and belief, Defendant did not have the aforementioned procedures in place as indicated in its policy application."

In Paragraph 20, WSLIC would like to add that "the warranties made by Defendant to WSLIC were false," and that Safe Auto should have provided notice of the *White v. Robinson* case to WSLIC when it filled out the Higher Limits Warranty.

Finally, WSLIC would like to add Paragraph 22, which states "The Policy contains Insurance Company Professional Liability Coverage Part, Form MPIC 001 (4/99).

These are the only changes made to the Second Amended Complaint, and the court fails to see how they are materially different from the language found in the First Amended Complaint. No new allegations are made, nor does the language help to elaborate on the claims outlined in the First Amended Complaint. Although leave to file an amended complaint should be liberally given, *see* Fed.R. Civ. Pro. 15(b), leave may not be given if amendment would be futile. In this case, allowing WSLIC yet another chance to amend their complaint does nothing to materially change the facts or allegations in the First Amended Complaint. The court is well aware that WSLIC believes Safe Auto had a duty to disclose the *White* or *Robinson* matters in their policy application. As discussed above, the court does not believe the policy application required such a disclosure. Furthermore, adding that the warranties made by Safe Auto were false is redundant of claims already made in the First Amended Complaint. Recognizing that this is a motion to dismiss, and the court must accept factual allegations as true, does not change the fact that WSLIC must present *some* evidence of Safe Auto's misrepresentations and may not simply sit back on the allegations alleged in the complaint. *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009) (". . . where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") WSLIC has failed to come forward with any facts that would alter the result of the court's decision on Safe Auto's motion to dismiss. Therefore, the motion to file a Second Amended Complaint will be denied.

**IV.	Conclusion**

Safe Auto was not asked to disclose either the *White* or *Robinson* matters in their application for insurance coverage with WSLIC, and as such, did not violate any terms of the contract between the parties.  In addition, WSLIC has not provided any new factual or legal allegation in their proposed Second Amended Complaint which are materially different from the First Amended Complaint.  As such, the motion to dismiss WSLIC complaint will be granted, and the motion to file a Second Amended Complaint by WSLIC will be denied.  An appropriate order to issue.


							S/SYLVIA H. RAMBO
							United States District Judge

Dated:  June  30, 2010.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WESTCHESTER SURPLUS LINES INSURANCE CO.** | No. 3:09-cv-1744 |
| Plaintiff | |
| v. | J. RAMBO |
| **SAFE AUTO INSURANCE GROUP, INC.** | |
| Defendant | |

## ORDER

In accordance with the accompanying memorandum of law, Defendant Safe Auto Insurance Group's motion to dismiss, (Doc. 25), is **GRANTED**. Plaintiff, Westchester Surplus Lines Insurance Company's motion to files a Second Amended Complaint, (Doc. 34), is **DENIED**. The clerk of courts is directed to close this case.

S/SYLVIA H. RAMBO<br>United States District Judge

Dated: June 30, 2010.